Atkinson, J.,
delivered the opinion of the court.
The defendants file a motion herein for a new trial on the grounds that the findings and judgment of the court are contrary to the law and the evidence.
*129 While it is true, as argued at bar, that there was a material difference between the claimants’ first bid for the construction-of the six barges for the Isthmian Canal Commission (under the Government’s advertising circular No. 310-C, which specified the size and strength of the barges desired by said commission), yet it was so specifically and clearly stated by the claimant in its second bid for the construction of the desired barges, the strength, weight, and measurement of the same being in detail specifically set forth, all which being agreed upon as shown by the contract, that we can not see any means of escape for the defendants upon either the law or the facts involved.
The Government’s proposal in its specifications was for the construction of six steel dump barges. The bid of the claimant was for six steel dump barges. The specifications suggested that the barges should be of a certain length, beam, and draft. The bid of the claimant proposed to construct barges of the same length, beam, and draft. The specifications called for a certain carrying capacity. The bid covered specifically these requirements. The specifications required the rake, hoppers, with water-tight bulkheads, inclination of hoppers, method of bolting same, etc. The bid proposed the construction of barges meeting all of these requirements. In short, the only difference in the barges which the claimant proposed in its contract to construct under its bid was a difference in weight of framing and plates from those contained in the advertisement of the defendants’ circular No. 310-C.
It is elementary that there must be a meeting of minds of the contracting parties in order to make a contract valid and binding. The decisions of the courts and all text-book writers agree on this proposition. It is argued, however, by counsel for the United States that in the case at bar there was not and could not have been a meeting of minds of the contracting parties when the contract involved herein was prepared and signed. The best evidence of the meaning and intent of a contract is the contract itself. If the language used by the contracting parties is plain and unambiguous, and there is no proof of concealment or fraud, there *130 can be no need of .the intervention of a court to pass upon such contract or to construe its meaning.
The law relating to a mistake and as to the nature and qualities of the subject-matter of a contract is also well settled. When a formal contract has been entered into, in order to void the same on the ground of mistake, the mistake must be' mutual. The fact that the mistake, if any, in the present contract is not mutual seems to have been overlooked by defendants’ counsel in the citation of authorities, as practically all of the authorities quoted in his brief relate to a mutual mistake as to the existence or quality of the subject contracted for. The other authorities quoted relate to a rescission of a contract or its cancellation in a court of equity or to the requirement of good faith on the part of a party where specific performance is sought. These authorities, as we construe them, do' not govern the case at bar, which is a suit for damages for breach of a contract valid on its face. But even if it be claimed that a mistake entitling the defendants to a rescission, it must be a mutual mistake or must have been induced by the fraud or misrepresentation of the claimant; and where it was not induced by fraud the court should place the parties in statu quo. In the cases cited there is no intimation that the mistakes resulted from the negligence of one of the parties to the contract. It seems clear, therefore, that the mistake as to the nature, quality, or existence of the subject-matter must be mu,tual in order to say that there was no “ meeting of the minds ” and, therefore, no contract.
As stated in our former opinion, where'two or more parties enter into a contract they are mutually bound by the terms thereof, although the understanding of one of them may differ from the other as to the intent and meaning of the same. (Baines v. Woodfall, 6 C. B. N. S., 657; Miller v. Lord, 11 Pick. (Mass.), 11; also see Page on Contracts and the collation of authorities in 7 Amer. & Eng. Enc. of Law, p. 117, et seq.; Hardy v. United States, 9 C. Cls. R.., 244; Brawley v. United States, 96 U. S. R., 168; Foster, Fed. Pr., p. 1050.)
Inasmuch as no additional evidence has been offered since the trial and disposition of this case bearing upon the lack of *131 knowledge of the contracting parties as to the full meaning, intent, and purpose of said parties, and no evidence of concealment, deception, or fraud on the part of the claimant is presented in favor of the motion before us, we can see no reason why the motion should be sustained.
Nor do we agree, as contended, that there was a substitution of different strength and material for those provided .in the specifications of the defendants as to the manner of constructing the barges. On the contrary, it would be rather a modification thereof. It is admitted that the defendants desired barges of a certain weight and strength, but when it was learned that they could not be manufactured for anything like the price expected by the agents of the defendants, the claimant tendered a bid to construct barges of the same dimensions but of less strength and weight, which bid was accepted and a contract was drawn thereunder and was duly signed and executed by the parties thereto. It is true there was no advertisement for bids under the reduced weight and strength of material to be used in claimants’ contract, still it seems unreasonable to us for defendants to insist that no modifications can be made by the parties to a contract in the details of the specifications submitted. Indeed, to make modifications of this kind is the rule rather than the exception. The purpose of an advertisement is to stimulate competition and to- prevent favoritism. These barges, as a matter of fact, were advertised for three times, covering a continuous period of forty-two days; hence it can not be claimed that it was not known among competitors that the United States desired to purchase six steel dump barges for use on the Isthmian Canal.
Considering again the whole case, no satisfactory reason having been offered, and no authorities cited as controlling, we reaffirm our former opinion in this case. Accordingly the motion for a new trial is overruled.
HowRy and Baiíney, JJ., did not hear this case tried and took no part in the decision.